IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DEVIN F.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:22-cv-01307-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

    Plaintiff Devin F. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.     Plaintiff's Application**

Plaintiff alleges disability based on polyarticular juvenile rheumatoid arthritis, immune deficiency, and vocal cord dysfunction. Tr. 331.[2] At the time of her alleged onset date, she was

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 10).

22 years old. Tr. 31. She has completed high school and has past relevant work experience as a fast-food worker. Tr. 31, 332.

Plaintiff protectively filed for DIB and SSI on March 11, 2019, alleging an onset date of May 25, 2017. Tr. 14, 328. Her applications were denied initially on August 13, 2019, and on reconsideration on January 10, 2020. Tr. 97-98, 108-09, 124, 137. Plaintiff subsequently requested a hearing, which was held November 3, 2020, before Administrative Law Judge ("ALJ") Sue Leise. Tr. 14, 32.[3] Two further hearings before ALJ Leise occurred on July 1, 2021, and August 26, 2021. Tr. 14, 15, 39, 69. Plaintiff appeared and testified at the first and third hearings, represented by counsel.[4] Tr. 14-15. A vocational expert ("VE"), Tom Weiford, testified at the first hearing. VE Anne Kemerer Jones and medical expert ("ME") Arthur Lewy, Ph.D., testified at the second hearing. VE Mark Mann and ME Steven Goldstein, M.D. testified at the third hearing. On September 24, 2021, the ALJ issued a decision denying plaintiff's claims. Tr. 32. Plaintiff requested Appeals Council review, which was denied on August 29, 2022. Tr. 6. Plaintiff then sought review before this Court.[5]

## II.   Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

---

[3] No transcript for the initial hearing on November 3, 2020, was included in the Administrative Record. However, that transcript's inclusion is not essential, as neither the ALJ nor the parties involved relied on said transcript.

[4] Plaintiff's counsel, attorney John E. Cahill, was present for the second hearing.

[5] The parties have consented to the jurisdiction of a Magistrate Judge, pursuant to 28 U.S.C. § 636. (ECF 4).

determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant

can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.   The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after her alleged onset date through the date of the ALJ's decision. Tr. 17.

At step two, the ALJ determined that plaintiff has the following severe impairments: "depression, anxiety, ADHD, juvenile rheumatoid arthritis, obesity, headaches, [and] IBS." Tr. 17.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. The ALJ then resolved that plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work, with the following limitations:

> She can lift/carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for at least 4 hours in an 8 hour workday; sit for at least 6 hours in an 8 hour workday; can do occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; frequent balancing; can occasionally stoop, kneel, crouch and crawl; should avoid exposure to vibration; should not work around hazards such as unprotected heights and dangerous machinery. She is able to remember, understand, and carry out routine, repetitive tasks or instructions that can be learned within a period of 30 days or by demonstration, consistent with occupations of SVP 1 or 2; should perform that requires only simple, work related decisions, with few if any workplace changes. She should avoid exposure to fumes, dust, odors, and gases.

Tr. 21

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 31.

At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a routing clerk, photocopy machine operator, or inspector/hand packager. Tr. 32. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 32.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors: (1) failing to assess an RFC that was supported by substantial evidence; and (2) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony. For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

**I.    RFC Determination**

Plaintiff asserts that the ALJ erred by failing to include certain limitations in the RFC which the record supports. Specifically, she argues that the record supports a limitation to low stress work. Pl. Br. 3. According to plaintiff, this limitation undermines the ALJ's RFC determination and the ALJ's hypothetical to the Vocational Expert (VE), thus "the suitability of the positions referenced is unknown." Pl. Br. 13.

The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. *Id.*; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The Court must defer to the ALJ's RFC determination when the evidence before the ALJ is subject to more than one rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004).

First, plaintiff argues that the ALJ should have included a specific limitation to "low stress work" because the ALJ "agree[d] with Dr. Stramschror's opinion regarding [plaintiff's] stress limitation." Pl. Br. 10. Dr. Stramshror noted that plaintiff had a moderate ability to "adapt to the usual stresses encountered in the workplace." Tr. 1163.

Dr. Stramschror, a consultative examiner and psychiatrist, reviewed plaintiff's records and evaluated plaintiff's mental impairments, which included a Medical Source Statement. Tr. 1159-66. Dr. Stramschror wrote that plaintiff's ability to "adapt to the usual stresses encountered in the workplace is fair." Tr. 1163. Plaintiff argues this use of the word "fair" equals a moderate limitation because the Social Security Administration's Medical Source Statement form defines a moderate limitation as one "functioning . . . on a sustained basis [as] fair." Tr. 1164.

Dr. Stramschror also wrote that plaintiff's "ability to interact with coworkers and superiors and the public" in the workplace was "fair." Tr. 1163. However, he checked off on the same form that plaintiff had a mild limitation in these areas, which is technically defined as "slightly limited." Tr. 1164-65. Thus, it is unsupported by the record that Dr. Stramschror's use of "fair" coincided to that of the Social Security Administration's use in equaling a moderate limitation.

The ALJ did not agree with Dr. Stramschror's opinion because she found it "not persuasive." Tr. 29. The ALJ found Dr. Stramschror's opinion "contradictory" because he wrote

that plaintiff would be impaired in her ability to perform work duties at a sufficient pace, regularly attend work, and complete a normal workday without interruptions but marked no limitations in understanding, remembering, and carrying out simple instructions, and making judgments on simple work-related decisions. Tr. 29; Tr. 1163-64. Dr. Stramschror specifically noted moderate limitations concerning carrying out and making judgments on complex instructions and decisions. Tr. 1164. He also wrote that "[c]hanges in routine work settings would likely be difficult for the [plaintiff]." Tr. 1165. The ALJ further opined that Dr. Stramschror's opinion also conflicted with plaintiff's activities, including part-time work, taking college courses, driving, and having normal results on mental status evaluations. Tr. 29.

The ALJ reasonably differentiated Dr. Stramschror's opinion in her analysis, finding that plaintiff had a moderate limitation in adapting and managing herself, as well as in concentrating and maintaining pace, which she included in the RFC by limiting plaintiff to routine, repetitive tasks requiring simple, work-related decisions with few or no workplace changes. Tr. 21. This limitation was consistent with other medical opinions, including, in part, with Dr. Stramschror's, and with plaintiff's activities. Tr. 28-30, 74-83, 88-109, 112-37, 1163-67. The ALJ's conclusions regarding plaintiff's RFC is supported by substantial evidence, and the Court will not reweigh the various medical opinions and other evidence in the record to come to a different conclusion when the ALJ's conclusion is rational.

## II.     Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in discrediting plaintiff's subjective symptom testimony, specifically regarding her headaches. Pl. Br. 14. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his

symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

A. *Testimony*

Plaintiff testified that she "wake[s] up every morning with a headache, and it lasts for . . . 30 minutes to an hour." Tr. 52. She stated that sunlight and "any strong smell" such as "detergent

or cleaning supplies" cause headaches, requiring her to wear sunglasses and avoid certain shopping aisles. Tr. 52, 53. Her headaches interfered with her ability to work as a store clerk, including having to avoid aisles with candles and having to "call out because [she] can't focus" with a headache. Tr. 53. She testified she had to miss work "at least once a month" due to waking up with a headache. Tr. 53, 56. Activities such as reading a newspaper were affected "a lot" by headaches, meaning "[m]aybe two time a week" she could not focus on the words to read." Tr. 54-55. Headaches prevented such activities "[f]or sure, the first hour [plaintiff was] wake" and "[p]robably twice a month" prevented similar activities for the entire day. Tr. 55. She stated headaches prevented her from focusing for more than an hour or two "once every two weeks." Tr. 55.

Regarding medications, plaintiff testified that "amitriptyline does really well" treating her headaches if taken without trazadone. Tr. 55. Plaintiff stated she takes amitriptyline every morning and night, and trazadone every night. Tr. 56. She testified that she knew taking only amitriptyline made her headaches better from when her doctors took her off trazodone, but she was unable to sleep without trazodone, making "everything else worse." Tr. 56. She also testified that she made A's and B's in college courses because the classes were "pretty easy . . . [and] didn't take much thinking." Tr. 59. She stated she "missed a ton of [class] days. But those classes relied less on attendance." Tr. 59. When asked how she received a B in Japanese 5, plaintiff testified that she "honestly [did]n't know" and she "never felt like [she] actually knew what [she] was doing . . . [and she thought] the teacher was being nice to [her], because [she] never had good scores on anything." Tr. 59.

After summarizing plaintiff's hearing testimony, the ALJ determined that her medically determinable impairments could reasonably be expected to produce the alleged symptoms, but

her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.". Tr. 22. In discounting plaintiff's testimony, the ALJ relied on the following rationales: that the testimony conflicts with plaintiff's improvement with treatment; that the testimony conflicts with medical evidence; and that the testimony conflicts with her activities. Plaintiff argues these are not clear and convincing reasons, supported by substantial evidence, for discounting her testimony. The Court addresses each rationale in turn.

  B. *Treatment Efficacy*

  As to the first reason, a claimant's treatment record is relevant to an ALJ's evaluation of subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). "Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.2d 867, 876 (9th Cir. 2017).

  The ALJ noted that plaintiff reported "partially effective medication" for her headaches. Tr. 26. Upon independent review, the record supports the ALJ's analysis. In October 2019, plaintiff reported her headaches improved by using an oral appliance at night for her temporomandibular joint pain (TMJ). Tr. 129, 517, 694. In March 2021, plaintiff noted daily tension headaches and being unable to tolerate higher doses of Gabapentin. Tr. 1283. Plaintiff's physician prescribed Elavil to use in the morning due to insomnia side effects at night. Tr. 1283, 1290. Plaintiff reported "some headache free days" with Elavil use and that Elavil was "significantly helpful" for headache treatment. Tr. 1286, 1345, 1349. Plaintiff also reported that taking amitriptyline at bedtime "helped quite a bit." Tr. 1297. The ALJ appropriately considered the effectiveness of plaintiff's treatment when evaluating her subjective allegations.

C. *Medical Evidence*

"When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (9th Cir. 2022). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, along with noting plaintiff's treatments, the ALJ concluded that plaintiff's symptom testimony contradicted with normal examination results present in the record. Tr. 26. The ALJ cited normal neurological exams, normal memory, thought process, alertness, and orientation, ability to perform serial three subtractions, spelling "world" backwards, and performing three-step tasks to show that plaintiff's record does "not support additional limitation due to distraction or foggy thinking from headaches." Tr. 26. The ALJ also noted that the State Disability Determination Services recommended light, short, and simple work for plaintiff, as well as other physicians in the record, including Dr. Steven Goldstein and Dr. Andrew Lewy. Tr. 28-30. The ALJ sufficiently differentiated these opinions from Dr. Stramschror's, as discussed above. Tr. 29.

The medical record demonstrates that plaintiff's subjective complaints were inconsistent with the record. Plaintiff's often normal exam results pertaining to neurological function, thought

process, alertness, and memory support the ALJ's conclusion. Tr. 455, 460, 488, 505. 510, 607, 66, 671, 709, 716, 724, 730, 769, 887, 900, 948, 1131, 1177, 1202, 1301, 1385. As noted above, plaintiff's record of effective medication also supports the ALJ's findings. Tr. 694, 1283, 1286, 1290, 1297, 1345, 1349. Medical opinions in the record support a finding of light work, and the ALJ further included limitations due to exertion or other irritants to avoid triggering plaintiff's headaches. Tr. 26, 28-30. The ALJ's citation to these objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002). This objective evidence is therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

Plaintiff argues that the ALJ's reliance on plaintiff's medical records and RFC determination do not account for plaintiff's "non-functional capacity during headaches, and/or work absences." Pl. Br. 16. However, plaintiff testified that strong smells and exertion triggered headaches, which the ALJ accommodated for in plaintiff's RFC. Tr. 26. Also, plaintiff's record indicates studies and concerns regarding hypersomnia and activity such as restless leg syndrome, and she participated in sleep studies to aid in her sleep. Tr. 1353, 1358, 1364, 1383, 1386. Studies found no signs of sleep apnea, but physicians recommended plaintiff improve her sleep hygiene through practices such as less phone use prior to sleep and removing her television from her bedroom. Tr. 1383, 1386. Furthermore, while plaintiff testified to feeling "overwhelmed" at work, this pertained to her mental status. Tr. 29, 78. Dr. Lewy testified that plaintiff appeared to have mild limitations in understanding, remembering, or applying information, and moderate limitations in adapting and managing, but plaintiff did not present clinical states that he could classify as being overwhelmed. Tr. 29, 80-81. He also recommended plaintiff to simple work

with basic tasks at steady paces. Tr. 29. Overall, the objective evidence presented clear and convincing reason for the ALJ to discount plaintiff's subjective symptom testimony regarding her headaches causing her inability to work.

### D. *Activities of Daily Living*

The ALJ also rejected plaintiff's subjective symptom testimony as inconsistent with her reported daily activities and functioning. Tr. 27. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

The ALJ pointed to plaintiff being able to achieve passing grades in college courses while working part-time, driving alone, playing video games for 30 minutes to an hour, taking care of her pets, and completing household chores (including cleaning, laundry, and weeding) as evidence that plaintiff's RFC did not support further additional restrictions due to headaches. Tr. 27. Defendant contends that "these activities represent a relatively normal level of activity, suggesting the plaintiff might be capable of performing basic demands of competitive employments." Def. Br. 13. Plaintiff argues that the ALJ "flatly ignore[d]" plaintiff's statements "explain[ing] Plaintiff's difficulty with school." Pl. Br. 18. Plaintiff further argues that the ALJ "failed to explain how [plaintiff's] daily activities established her ability to sustain competitive employment on a full-time basis." Pl. Br. 18.

The ALJ provided clear and convincing reasoning, supported by substantial evidence, to discount plaintiff's testimony. The ALJ's use of plaintiff's ability to complete and pass college courses through 2018 and 2019 is specific and convincing reasoning for providing no further limitations regarding plaintiff's ability to remember, understand, and apply information. Tr. 27.

Though plaintiff argues that these classes did not rely on attendance and were "fairly easy," this does not detract from plaintiff's ability to perform in those courses to require further limitations. Pl. Br. 18. Furthermore, plaintiff's ability to work while completing college course further supports the ALJ's reasoning. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled . . ."). While a plaintiff does not have to be "utterly incapacitated" to be disabled, plaintiff's physical and mental abilities do not support further limitations due to headaches. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); see also Smartt, 53 F.4th at 499-500 (ALJ's consideration of a claimant "engag[ing] in a somewhat normal level of daily activity[,] such as by "doing laundry, grocery shopping . . . and completing various chores[,]" despite her limitations, supported discounted the claimant's subjective symptom testimony).

Due to plaintiff's headaches, the ALJ included limitations to light work, with further physical limits, and included no exposure to hazards or "fumes, dust, odors, or gases" to avoid triggering plaintiff's headaches. Tr. 25. The ALJ further included limitations to only routine, repetitive tasks, instructions, and work-related decisions to accommodate plaintiff's headaches. Tr. 25. The ALJ's RFC determination included sufficient limitations to accommodate plaintiff's headaches and avoid triggering headaches, such as by smells, which plaintiff testified were impediments to her ability to work in the past. Tr. 52-56. The ALJ properly discredited plaintiff's subjective symptom testimony and accommodated for plaintiff's headaches in the RFC determination, demonstrating the most plaintiff can do in a work setting with the limitations from her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

///

///

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 14th day of August, 2023.

                                                ANDREW HALLMAN
                                                United States Magistrate Judge